## Riley v. Taylor's Guardian.

(Decided March 27, 1931.)

GLOVER H. CARY for appellant.

KIRK & BARTLETT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

A fund of $500.25, made up of royalty from oil operations and belonging to Homer Bartlett as a joint owner with his brothers and sisters of a leased farm in Ohio county, by some means, not disclosed by the record, came into the hands of appellant and defendant below, R. R. Riley, as custodian, or agreed trustee, to be held by him until its owner could be discovered or until he should be directed by the court to whom to pay it. Essie May Taylor was and is the only child of Homer Bartlett, and consequently his only heir, if he is dead, and her statutory guardian filed this action in the Ohio circuit court against Riley, the custodian of the accumulated fund made up of her father's proportion of the royalty, in which plaintiff alleged that his ward's father, as much as fourteen years ago and while a resident of this state, left it and has not returned for more than seven successive years; that he "is presumed to be dead . . . and that she is the owner of all the property in which the said Homer Bartlett had an interest at the time of his death at the time aforesaid," Defendant in his answer alleged a want of knowledge or information sufficient to form a belief as to all of the material facts set out in the petition, but expressed his willingness to pay the fund to whomsoever the court might direct. Evidence was heard, and the court sustained the prayer of the petition and

ordered and directed defendant to pay the fund to plaintiff as guardian for his ward, who was adjudged to be the only heir of Homer Bartlett, whom the court also adjudged as deceased under the statutory presumption contained in section 1639 of our present Statutes, and from that judgment defendant prosecutes this appeal upon the grounds that the petition did not allege the necessary facts to entitle plaintiff to the relief sought, nor was the proof sufficient for that purpose.

The statute is one of long standing in this jurisdiction, and it has been held in a number of cases to be declaratory of the common-law rule on the subject, and it has been before this court in numerous cases as will be seen in the notes to that section. In them various questions arising thereunder were presented and determined, but many of which are not presented, nor are they relevant to the determination of this case, since, as we have seen, the only objections to the judgment are the insufficiency of the allegations and the proof to sustain them. In support of the objection to the sufficiency of the petition, the case of Rush v. Edison, 215 Ky. 526, 286 S. W. 780, 782, is relied on. In the course of that opinion, this statement appears: ''There is no averment that he (the person supposed to be dead) was actually dead at the time of the filing of the pleadings, or that he had not returned to the state, if absent, or been heard from by other persons.''

In other words, that opinion intimated (only) that, in the absence of the averment of necessary facts to raise the presumption of death, an express allegation that the absent person was dead should be made, but the court evidently never intended to say, that if the facts necessary to create the presumption under the statute, as well as under the common-law rule, were alleged and were proven, it should further be alleged and proven that the departed person was actually dead. Such a practice, if required, would render the statute nugatory and of no service and incapable of effectuating any purpose whatever; for, if the departed person was actually dead, then there is no room for any presumption, since its only purpose is to supply proof of actual death. If the latter is required to be both alleged and proven, then the other requirements, of absence from the state for as much as seven years without being heard from, have no place in the case and would be wholly foreign to the purposes of the inquiry. We are clearly convinced that the relied

on statement in the opinion in the Rush case was never intended to prescribe such a rule of practice as is contended for by defendant's counsel when the other necessary facts to raise the presumption appear in the pleading and are established by the testimony.

The testimony in this case shows that Homer Bartlett and his wife did not live together harmoniously and he left her while they were residing in this state and went away from it. For a while he was occasionally heard from by different members of his family, and in March, 1923, his daughter, Essie May Taylor, who was then of course unmarried, saw him in the city of Evansville, Ind. She was then a mere child and he was severely afflicted with boils over his body and under the treatment of a physician. At the termination of that meeting, she returned to Kentucky and has never seen or heard from her father since that time, nor, according to the proof, has any one else. It further appeared that at the time of the discovery of oil deposits under the surface of portions of Ohio county, and particularly when it was discovered under the Bartlett farm in which Homer Bartlett was a joint owner, the facts were extensively circulated by newspaper reports and periodicals engaged especially in distributing such information, and that, notwithstanding such facts, no trace of Homer Bartlett was obtained; nor could any information as to his whereabouts be obtained through letters sent by members of the family to various police headquarters throughout the country. So that it specifically appears that when Homer Bartlett first disappeared he was a citizen and resident of this state, and there is no testimony that any one ever saw him after that, except his daughter on the occasion she testified to in March, 1923, and more than seven years intervened between that time and the time of the filing of this action. In the case of Mutual Benefit Life Insurance Co. v. Martin, 108 Ky. 11, 55 S. W. 694, 696, 21 Ky. Law Rep. 1465, this court upon the points now under consideration said:

"When the plaintiff shows that a resident of the state has been absent seven successive years from the time he left, *or from the time he was last heard from,* the burden of proof shifts to the defendant to overcome the presumption of his death." (Our emphasis.)

In passing upon the sufficiency of the proof to establish the presumption that opinion said:

"This proof may be direct, or it may be circumstantial, arising from the circumstances under which the person left, his reasons for leaving, or concealing his whereabouts, his age, condition of health, his motives for not returning or keeping in communication with his home, and the like."

Other pertinent cases are, Hitt v. Campbell, 185 Ky. 80, 214 S. W. 785; Modern Woodmen of America v. Hurford, 193 Ky. 50, 235 S. W. 24, 21 A. L. R. 1340; Duncan v. Glore, 189 Ky. 132, 224 S. W. 678; and others found in those opinions. Nothing found in any of them sustains the contention of defendant's counsel. On the contrary, they approve the practice pursued in this case and sustain the judgment based on substantially similar evidence to that introduced herein.

A third insistence is, that Homer Bartlett should have been proceeded against as a nonresident and brought before the court by constructive service. No authority is cited in support of that contention, and we are convinced none can be found, since the action or proceeding is not one against a living nonresident of the state, but is one exclusively for the purpose of proving, by the introduction of sufficient testimony to establish the statutory presumption, that the departed and now absent person is dead, and to procure an adjudication based upon such presumption. To hold that such a requirement is necessary in this character of action would make it utterly inconsistent with the purpose of the statute and with the character of judgment sought to be procured, which is, as we have seen, one to establish the *fact* of the death of the person who went away from the state and stayed away from it unheard of for as much as seven years and in the manner set out in the statute, and which is entirely a different thing from proceeding against a live person who is a nonresident of the state. See Duncan case, supra.

The rights and remedies of the person who is adjudged to be dead in such a proceeding, if he should later appear and desire to' assert them, are matters with which we have nothing to do in this case, since they are not presented. This character of proceeding is intended only to fix the status of living persons toward property

interests formerly possessed by another, but which latter has so conducted himself as to authorize a present adjudication that he is dead. To what extent he might modify or set aside such adjudication, and what his rights would be, if that was done, are entirely foreign to the purpose intended to be subserved by the statute.

We therefore conclude that none of the grounds urged authorize us to interfere with the judgment; that the court committed no error in rendering it, and it is affirmed.